## Alfred T. Cookson *v.* The Pittsburg and Western Railway Company, Appellant.

*Negligence—Evidence—Opinions of witness.*

Where mere descriptive language is inadequate to convey to the jury the precise facts, or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion, in order to put the jury in position to make the final decision of the fact. But whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men without special knowledge or training, opinions of witnesses, expert or other, are not admissible.

*Grade crossings—Evidence—Where to " stop, look and listen "—Opinion of witness.*

In an action against a railroad company to recover damages for death at a grade crossing where the evidence shows that there were two places at which the deceased might have stopped, looked and listened for an approaching train, and the relative advantages and disadvantages of each could only be described in a general way, it is a fair case for witnesses who are familiar with both places to supplement their descriptions with their opinions in aid of the jury in reaching a decision.

*Negligence—Railroads— Grade crossings—Customary place to " stop, look and listen "—Evidence—Question for jury.*

The usual and customary place of stopping by people when about to cross a railroad at a grade crossing cannot be said as a matter of law to be an improper or negligent place.    The standard of negligence is what persons of ordinary prudence and carefulness would do under the same circumstances ; and a general habit of the public to stop in a certain place, is persuasive evidence that that place is the right one.

The duty of a traveler in approaching a railroad crossing is not only to keep a vigilant and continuous lookout, but to stop if a second place affords any increased facility to discover impending danger ; but whether there is any such second place is a question of fact for the jury, if at all in doubt.

In an action against a railroad company to recover damages for the death of plaintiff's wife at a grade crossing, the evidence tended to show that the deceased was driving a wagon on a public road towards the grade

crossing. She stopped at a point one hundred and seventy-five feet from the crossing. Here she waited some minutes, and while she was waiting, a train was run northward, and after detaching three cars upon a siding by a flying switch, was continued over and beyond the public road, and then back over the crossing again with no brakeman at the rear, and no warning except the ringing of the bell at the other end. The deceased was struck by the train as it reached the crossing the second time, running backward. It appeared that there was a down grade towards the railroad track, and that the view was obstructed more and more in descending to the track by a stone wall on the right and by buildings on the left, and particularly on this occasion by one of the cars just switched off, which stopped before it got entirely across the road. There was another place where the deceased could have had a better view of the tracks, but it was so close as to be dangerous in case the horses should become frightened. The evidence showed that it was customary for the public to stop at the place where the deceased had halted. *Held*, that the question of defendant's negligence and the plaintiff's contributory negligence was for the jury.

Argued Oct. 19, 1896. Appeal, No. 2, Oct. T., 1896, by defendant, from judgment of C. P. Butler Co., Dec. T., 1895, No. 82, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for the death of plaintiff's wife and son.

At the trial it appeared that on February 1, 1894, plaintiff's wife, Malinda Cookson, and her son, Walter, were killed by one of defendant's trains at a grade crossing in Evans City. The accident occurred about nine or ten o'clock in the morning. Mrs. Cookson was driving two horses hitched to a common country sled, and was accompanied by her son, who was about eleven years of age. Mrs. Cookson was about thirty-three years of age, and was a strong and healthy woman. The scene and the circumstances of the accident are thus described by the court below in an opinion refusing a new trial:

On the day of this sad catastrophe Mrs. Melinda Cookson, the wife of the plaintiff, and their eleven-year-old son, Walter, left their home in Cranberry township, at near ten o'clock in the forenoon, to go to the village of Evans City, in Butler county, about four miles away. It was snowing, and there was considerable snow on the ground. They went in a common country sled drawn by two horses, Mrs. Cookson doing the driving. Evans City is a little country town with a population

of six or seven hundred people, about four miles from the
Cookson residence, in a thickly settled farming and oil-producing
community.  Breackneck creek flows northward through its
western side, and the main street—Pittsburg street—runs
westward, crosses the stream over a bridge, and when about
a hundred feet west of the stream forks, the right hand fork
being known as the Harmony road, running northwest to Har-
mony, and the left hand as the Franklin road, running south-
west towards Pittsburg.  It was on this last named road Mrs.
Cookson and her boy traveled.  The defendant's railroad passes
northward down the western bank of the creek, western bound
trains at this point going northward and eastern bound trains
southward.  Its station house is west of the railroad, and about
forty feet north of the crossing, near the point where the Har-
mony and Franklin roads separate and leave Pittsburg street.
There is a double track with a switch established about one
hundred and sixty feet above and south of the crossing, from
which cars are thrown upon a siding at the west of the railroad
to bring them closer to the station house.  In addition to this,
Mr. Ifft, a business man there, has a private track or spur going to
his warehouse immediately between the Harmony and Frank-
lin roads running from this switch about twenty feet west of
the siding of the railroad company, making in all four tracks
to be crossed by travelers at this point.  The ground on the
Franklin road ascends as it leaves Pittsburg street at the rail-
road crossing, and runs southwest.  On the south side is the
property of Mr. Ifft, much higher than the road-bed, and sur-
rounded by a high stone wall clear down to the railroad, which
shuts off the view southward.  On the other side buildings are
erected, and the view westward is obstructed. · Mrs. Cookson
reached a point on this road about one hundred and seventy-
five or two hundred feet from the railroad, near the house of
Miss Boggs, a little before noon.  A freight train of the de-
fendant, containing ten cars and caboose, going from Allegheny
westward, passed down northward on the eastern track about
11 : 30 A.M, pulled down past the station to a switch north of
it and backed up southward on the western track—main track—
south of the station, then headed in on the siding, attached one
car ahead of the engine, backed out and swung the cars down
the siding.  One was a box car, and the other two were coal

cars, loaded with coal. These two cars were ahead of the box car, and ran north past the crossing and a little north of the station house. There is some dispute as to where the box car stood; however it did not clear the crossing, which is at grade. The engine, caboose and seven cars went down the main track —eastern track—over the crossing, the last car, a box car, being about three lengths—ninety or a hundred feet—below it, when the engine was signaled to back up, and the train was backed up. At this time Mrs. Cookson and her boy, team and sled were on the track, and were struck by the backing box car. She was instantly killed, and the boy died from his injuries a few hours afterwards. When she came to the house of Miss Boggs, about one hundred and seventy-five or two hundred feet from the track, she stopped for some ten or fifteen minutes, looked and listened. At this point she could see the crossing and bridge beyond distinctly, and could see the cars crossing the wagon road, and for a short distance she could see the tops of the cars on the railroad, but not the track at either right or left of the crossing. After leaving her stopping place at Miss Boggs's house she could not see the railroad to her right, on account of the high ground and stone wall at Mr. Ifft's property, neither could she see to her left, on account of buildings at that side of the road. When she came near the track her view to the left—north—was obstructed by the box car, which was thrown in on the siding immediately before she reached the track, which was not far enough north to clear the crossing. Mr. Didier, the defendant's engineer and witness, testifies that on account of the position of the box car there was no point from the road on which Mrs. Cookson stopped where she could see either up or down the railroad track until she came within thirteen feet of the south-bound track—the one on which she was killed—and there she could see ten feet north of the road or street. The ordinary distance from a driver's seat on a common country sled to the point of the tongue is ten or twelve feet, so that when she was in a position to see ten feet down the track and north of the street her horses' heads must necessarily have been up within two or three feet of the track on which the accident occurred, and the ordinary box car extends some eighteen or twenty inches beyond the track, leaving little or no room for a team of horses to stand in front of her.

During the trial several witnesses who were familiar with the place of the accident, having testified as to their knowledge of it, were asked whether, in their opinion, Mrs. Cookson had stopped at the proper place. The testimony was admitted under objections and exceptions. (1–3)

The court charged in part as follows :

[The law regards the life of every man with a jealous care ; it looks upon human life as a precious thing, and it makes it the duty of every man and every corporation and every company throughout this great land of ours to have every regard and every respect for the welfare and interest and life and property of others. We do not live in this world to live alone ; we live here for one another ; it would be a cold, cold world were we to live here by ourselves. The law also gives to every man, although it may not seem sentimental, a property in his wife and in his children until they become twenty-one years of age. When a man marries a wife and takes her by the hand and promises before God and the people in his presence to love and honor and respect her so long as they two live, the law gives to that man the benefit of the society and the company and the love and the labor of that wife as long as she lives, and should she be taken away from him, or should she be injured by anybody through negligence and want of care, and there be no negligence on her part or on the part of her husband, the law gives to that man the right of compensation for the loss that he has sustained on account of the result of the injury she has received, and makes to him that compensation in damages ; the law intends it to be enough to compensate him for his loss financially.] [5]

[I am here to perform the duties that the law has assigned me ; I am here to perform that duty under oath ; I am here to perform it conscientiously, honestly and fearlessly ; it is the duty of the court to regulate the submission of the evidence to the jury ; it is the duty of the court to explain the law to the jury ; it is not the duty of the court to decide the facts or in any way interfere with facts that are in dispute or contradicted. It is the duty of you gentlemen, called from the four quarters of our county, called here by the process of law, called here by the official acts of sworn officers, to decide this case upon the testi-

mony that is submitted to you, and before you attempt to do anything in the case, before you hear a word of testimony, you take a solemn oath before high heaven to render a true verdict according to the evidence and the charge of the court; you know neither party; you are not for the plaintiff nor the defendant; you are not for the one or the other, but you are here to do justice, honestly, conscientiously and fairly between these parties, without regard to who they are, or what they are, and it is your duty, gentlemen, and mine, when we come to perform our solemn, important duty in this solemn and important case, to throw out of our minds any prejudice, everything that would attempt to lead us in any way from the fair, honest, faithful discharge of our duties, and we must take up this case as it has been brought to us by the parties who brought it here, and we must decide it as the law has directed us, the court to pass upon the law, and the jury to pass upon the facts, and when the court attempts to go down into the jury box, or attempts to interfere with the decision of the facts by the jury, that court does injury to itself and injury to the jury, as much as if the jury would come on the bench and attempt to decide the law in the case. I do not look upon it as a light, trivial matter to be a juror, sworn to decide a case according to the evidence in an important case like this; it is a high and important office, and one that requires every man upon that jury to carefully and conscientiously weigh everything in the case, because upon you depends this case; upon you rests the verdict; upon you is the responsibility of measuring out evenhanded justice to the plaintiff and defendant. We have been asked to take this case from the jury and decide it upon a question of law, and with the proper intentions on the part of the attorney asking it, but we believe and we feel that the law has stated where the facts are so closely and conclusively proved as to admit of no reasonable doubt, it is the duty of the court to declare the law applicable to it; but where material facts are disputed or even in doubt, or inferences of facts are to be determined from the testimony, it is the exclusive province of the jury to determine what the facts are, and apply to them the law as declared by the court.] [6] . . .

Now, then, it is alleged on the part of the defendant that this lady did not stop, look and listen. Did she? If she did not, I

say to you now your verdict must be for the defendant, for the railroad company. The proof is that she stopped up at Miss Bogg's house, a distance to be settled by you, one hundred and sixty or sixty-five feet or two hundred and five feet from the crossing, about twice the length of the courthouse this way; that at that point the ground is higher; you heard the testimony, that she stopped and waited some time; the defendants admit that she stopped there and that she waited, but they allege that she could not see from there and that when she stopped at that place she could not see, and is equivalent to not stopping at all, and say that she should have come down to the railroad track and stopped, and she should have done that, and no damage should be assessed against them, and on this point they ask the court to say that she was guilty of contributory negligence; the court refused to do that, but submitted that to you under authority from a decision of our Supreme Court that where there is a dispute or doubt as to the proper place for the injured party to stop and look and listen, that that is a matter of fact the jury must decide; and taking that view, I left it to you to say whether or not this lady stopped, looked and listened at the right place. You heard the testimony as to what was the extent of her view where she did stop; there was no trouble in seeing the crossing of the trains passing up and down, but the testimony differs somewhat as to what view she had of the north and south part of the railroad.

[It is admitted all around that there was no point from the place she stopped and looked and listened that she could stop, look and listen between that and the crossing until within thirteen feet of the siding; so that there would be no reason or sense in stopping at another place; there was no point for her to stop on the Harmony road because her view was obstructed, as admitted, by this box car. The law requires no foolish things; she was not obliged to stop, look and listen at a point she could not stop and listen.] [7]

Defendant's points and answers thereto among others were as follows:

3. That upon the uncontradicted evidence of Robert McKarihan, defendant's witness, that Mrs. Cookson and her son, before going upon the track of the defendant's railroad at such cross-

ing, were signaled and warned by him to stop, and that they did not stop, but continued to urge their horses forward upon the tracks,. and were caught and killed by the train approaching thereon, they were guilty of negligence contributing to the injury and death complained of, and the plaintiff cannot recover. *Answer :* We leave the question to the jury to determine from the evidence whether Robert McKarihan signaled Mrs. Cookson to stop, and whether she disobeyed the signal, and say to the jury, if she saw the signal of Robert McKarihan and disobeyed it, and could have stopped safely, she would be guilty of contributory negligence, and the plaintiff cannot recover; that is a question of fact which the court cannot determine; that is for you. [8]

4. That the rule requiring one about to cross the tracks of a railroad to stop, look and listen for an appproaching train thereon, is a clear, certain and unbending rule of duty, and a failure to observe it is negligence per se, and under the uncontradicted evidence of Miss Millie Boggs and Mr. McKarihan, that Mrs. Cookson and her son did not stop, look and listen for the approach of trains immediately before going upon the tracks of the defendant's railroad, and were struck and killed by a train thereon, the plaintiff cannot recover. *Answer :* We leave the question to the jury to determine from the evidence in the case whether she, Mrs. Cookson, stopped at the proper point; if she did, then she was not guilty of contributory negligence, unless she had the warning and saw it and heard it from Mr. McKarihan. [9]

5. That from all the evidence the verdict must be for the defendant. *Answer :* We refuse that point. The claim for damages is for $50,000 ; that will not govern you in your finding, more than this, that you could not bring in a verdict for more than $50,000. [10]

Verdict for plaintiff for $18,575, upon which judgment was entered for $13,575, plaintiff remitting the difference. Defendant appealed.

*Errors assigned*, among others, were (1–3) rulings on evidence, quoting the bill of exceptions; (4) that the charge was inadequate; (5–10) above instructions, quoting them.

*R. P. Scott*, for appellant.—The negligence of the deceased was manifest: Smith v. Ry. Co., 160 Pa. 117; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 308; Greenwood v. R. R., 124 Pa. 572.

The duty to stop, look and listen is absolute and unyielding: Lake Shore Ry. v. Frantz, 127 Pa. 307; North Penna. R. R. v. Heileman, 49 Pa. 60; Irey v. R. R. Co., 132 Pa. 563; Kraus v. R. R. Co., 139 Pa. 272; Blight v. R. R. Co., 143 Pa. 10; Hauser v. R. R. Co., 147 Pa. 440; Ash v. R. R. Co., 148 Pa. 133; Myers v. R. R. Co., 150 Pa. 386; Lees v. R. R. Co., 154 Pa. 46; Smith v. R. R. Co., 160 Pa. 117; Gangawer v. R. R. Co., 168 Pa. 265; Seamans v. R. R. Co., 174 Pa. 421; Connerton v. R. R. Co., 37 W. N. C. 23.

The more difficult it was to see, the greater the necessity to stop and listen: R. R. v. Beale, 73 Pa. 504; Gerety v. R. R., 81 Pa. 277; R. R. v. Ackerman, 74 Pa. 265; Hughes v. Canal Co., 38 W. N. C. 393; R. R. v. Mooney, 126 Pa. 252; Urias v. R. R., 152 Pa. 326.

*Lev. McQuistion*, with him *J. C. Vanderlin*, for appellee.— Negligence being the absence of care according to the circumstances, and being measured by the apparent danger, the duty of the defendant company to give warning, and to approach at moderate speed, was greater than at an ordinary country crossing: Ellis v. R. R., 138 Pa. 506; Whitman v. R. R., 156 Pa. 175; Del. R. R. Co. v. Jones, 128 Pa. 308.

The duty of the railroad company in making a flying switch over this crossing rested heavier upon them, because they knew better than Mrs. Cookson its dangerous character. They passed it daily, she only occasionally: Phila. & Trenton R. R. v. Hagan, 47 Pa. 244; Kay v. Pa. R. R., 65 Pa. 269.

Mrs. Cookson stopped, looked and listened at the proper place: Downey v. Traction Co., 161 Pa. 133; Ellis v. R. R., 138 Pa. 506; R. R. v. Beale, 73 Pa. 504; Gray v. Pa. R. R., 172 Pa. 388; Del. R. R. v. Jones, 128 Pa. 314; Turnpike v. R. R., 78 Pa. 219; Penna. R. R. v. Coon, 111 Pa. 430; Schum v. Pa. R. R., 107 Pa. 8; Neslie v. Pass. R. R. Co., 113 Pa. 300.

In submitting the case to the jury the court below complied with the well established rules of this court, that negligence is always a question for the jury where there are any doubts as to

the facts, or as to the inferences to be drawn from them: Penna. R. R. v. Barnett, 59 Pa. 264; Smith v. Baltimore & Ohio R. R., 158 Pa. 87.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

The appellant's train was run northward and after detaching three cars upon a siding by a flying switch, was continued over and beyond the public road, and then backed over the crossing again with no brakeman at the rear, and no warning except the ringing of the bell at the other end, even this being disputed. Under such circumstances the appellant's negligence, though not formally conceded, did not admit of serious contention.

The public road had a down grade towards the track, and plaintiff's decedent stopped at a point about one hundred and seventy-five feet from the crossing. Here she waited some minutes until the three cars were switched off, and the train had proceeded north over the crossing. She then drove on, and was struck by the train as it reached the crossing the second time, running backwards.

The first three assignments of error are to the admission of the opinions of witnesses that the place where the deceased stopped to look and listen, was the best or at least a proper place. The subject of the admissibility of a witness's opinion was considered in Graham v. Penn. Co., 139 Pa. 149, and the rule there settled that where mere descriptive language is inadequate to convey to the jury the precise facts, or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion, in order to put the jury in position to make the final decision of the fact. But whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men without special knowledge or training, opinions of witnesses, expert or other, are not admissible. This rule was followed in McNerney v. Reading, 150 Pa. 611, and Dooner v. Canal Co., 164 Pa. 17. As already said, the distance at which the deceased stopped was considerable, but evidence was given on the part of plaintiff that this point was on the rise of the hill, and that the view was obstructed more and more in descending to the track, by a stone wall on the right, and by buildings on the left, and particularly on this occasion

by one of the cars just switched off by this train, which stopped before it got entirely across the road. There was another place where perhaps a better view of the tracks could be had, but it was so close as to be dangerous in case the horses should become frightened. As the relative advantages and disadvantages of the two places could only be described in a general way, it was a fair case for the witnesses who were familiar with both to supplement their descriptions with their opinions in aid of the jury in reaching a decision.

The main argument of appellant however is that the evidence shows incontrovertibly that the deceased was negligent in not stopping at the second point already referred to, a level space just before reaching the track, and therefore the verdict should have been directed for the defendant. The evidence is uniform that there were but two places where a stop could be profitably made, one at considerable distance and the other very close to the crossing. Each had its advantages and its disadvantages. The deceased chose the remoter point, and there was evidence that in so doing she followed the usual habit of people at that crossing. This evidence of itself prevented the court from deciding it to be negligence per se. The usual and customary place of stopping by people using a road cannot be said as matter of law to be an improper or negligent place. The standard of negligence is what persons of ordinary prudence and carefulness would do under the same circumstances, and a general habit of the public to stop in a certain place, is persuasive evidence that that place is the right one. The further the stopping place is from the track the greater will be the chance of an intervening peril before actual crossing. The duty of the traveler is therefore not only to keep a vigilant and continuous lookout, but to stop if a second place affords any increased facility to discover impending danger, but whether there is any such second place is a question of fact which is for the jury if at all in doubt. On this branch the present case is closely analogous and governed by Whitman v. Penn. R. R. Co., 156 Pa. 175, and the remarks there made are applicable to the facts here, "If notwithstanding the drawbacks of the place where plaintiff stopped, it still had sufficient advantages over other places to make it the habitual choice of travelers on that road, only a jury can say whether or not it was the best or a proper place to stop, and

even if it was, whether considering its disadvantages it was negligence in the plaintiff not to stop a second time on the level before reaching the track." See also Ely v. Rwy. Co., 158 Pa. 233.

Several of the assignments of error are to the language of the charge. Its tone lacked judicial calmness, and in parts at least came dangerously near being inflammatory as to damages, in an action of a class that peculiarly imposes on the judge the duty to repress natural sympathy with the injured and the suffering, and to hold the jury firmly down to the consideration of strict rights and responsibilities. Our books are not without cases of reversal for errors of this kind. But the nature of the issue and the evidence and law applicable to it were correctly set before the jury, and though the tone of the charge was objectionable, we do not think it was so erroneous that we should reverse for that cause alone.

Judgment affirmed.