# Newman, Appellant, *v.* Delaware, Lackawanna & Western Railroad Company.

*Negligence—Grade crossing—" Stop, look and listen."*

It is the duty of one about to cross, at grade, the tracks of a railroad, to stop, look and listen at a proper place, and having observed this duty, he is also required to be especially vigilant and careful as he continues toward the crossing, particularly if his view is obstructed. If there is another safe and better place for him to stop, he should do so, but whether there is such a place, and whether he failed to observe the necessary precaution or carefulness after he had once stopped at the usual and customary place of stopping, is a question for the jury, not for the court.

Argued April 16, 1902. Appeal, No. 51, Jan. T., 1902, by plaintiff, from order of C. P. Luzerne Co., Oct. T., 1898, No. 14, refusing to take off nonsuit in case of Henry C. Newman v. The Delaware, Lackawanna & Western Railroad Company.

Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ    Reversed.

Trespass to recover damages for personal injuries.  Before Ferris, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order refusing to take off nonsuit.

*Paul J. Sherwood,* for appellant.—The case was for the jury : Bard v. Phila. & Reading Ry. Co., 199 Pa. 94; Quigley v. Del. & Hudson Canal Co., 142 Pa. 388 ; McNeal v. Pittsburg, etc., Ry. Co., 131 Pa. 184 ; Newhard v. Penna. R. R. Co., 153 Pa. 417 ; Penna. R. R. Co. v. Hurst, 110 Pa. 226 ; Penna. R. R. Co. v. Barnett, 59 Pa. 259 ; McGrew v. Stone, 53 Pa. 436.

*Andrew H. McClintock* and *Henry W. Palmer,* with them *Arthur Hillman,* for appellee.—The nonsuit was properly entered : Myers v. B. & O. R. R. Co., 150 Pa. 386 ; Marland v. Pittsburg, etc., R. R. Co., 123 Pa. 487 ; Derk v. Northern Central Ry. Co., 164 Pa. 243 ; Plummer v. N. Y., etc., R. R. Co., 168 Pa. 62; Gangawer v. P. & R. R. R. Co., 168 Pa. 265 ; Gleim v. Harris, 181 Pa. 387 ; Sullivan v. N. Y. etc., R. R. Co., 175 Pa. 361; Wojochoski v. Cent. R. R. Co., 10 Pa. Superior Ct. 469; Holden v. Penna. R. R. Co., 169 Pa. 1 ; Fox v. Penna R. R. Co., 195 Pa. 538; Kern v. Second Avenue Traction Co., 194 Pa. 75.

Opinion by Mr. Justice Mestrezat, October 13, 1902 :
About eight o'clock in the morning of February 17, 1898, Henry C. Newman, the plaintiff, was driving one horse hitched to a buckboard along a country highway in Lackawanna county and approached a grade crossing of the defendant's double-track railroad.  The general direction of the highway was north and south, and the plaintiff was driving south.  An automatic electric signal bell stood on the left or east side of the highway, and from fifteen to thirty feet north of the railroad.  Painted upon the post of this signal appliance in large letters were the words : " Danger while the bell rings."  The

purpose of this bell was to give notice of a train approaching the crossing from either direction.   If in working order, it began to ring when the locomotive was 2,000 feet from the crossing and continued until the crossing was passed.   The plaintiff stopped about sixty or seventy feet from the crossing and looked and listened for a train.   At this point he had an unobstructed view for a long distance to the west, but to the east or his left the view was obstructed by a hill which prevented him from seeing the train or engine going west on the west-bound track. The view of the railroad track to the east continues to be obstructed until the person approching the crossing is within thirty or thirty-five feet of the crossing, and his horse is fifteen or twenty feet from the railroad.   On the right or west side of the highway there is a deep ravine, and on that side of the road for about fifty feet north of the railroad, there is no fence or wall to prevent a frightened or unruly horse from backing a vehicle over the precipice.   Under the testimony the jury would have been warranted in finding that this was a dangerous place for a traveler to stop his team to listen for an approaching train.   During the time the plaintiff's team was stopped, a coal train passed the crossing going west.   After it had gone a few hundred feet, and hearing no warning of an approaching train, Newman drove towards the crossing.   When his horse was about fifteen or twenty feet from the west-bound track and he and his wagon were opposite the signal bell, he again attempted to stop the horse, but being frightened by the shrill, loud whistle of a light passenger engine approaching from the east at a speed of from fifteen to eighteen miles an hour, the animal jumped to the right toward the embankment and, in the language of the plaintiff, " I pulled her back into the road and she sprung right across the track, and when she came upon the track this engine going west struck her and killed her."   The automatic bell was not ringing and no other signal was given of the approaching locomotive.

The learned trial judge granted a nonsuit on the ground that the plaintiff was guilty of contributory negligence.   In his opinion refusing to take off the nonsuit he says : " We think the plaintiff was clearly guilty of contributory negligence, not in pulling his horse back from the bank, for he was in a position of sudden peril, but in voluntarily or carelessly placing

himself in that position, it being one of obvious danger. His duty was, not to begin to draw up his horse when the latter was within fifteen or twenty feet of the track, but to begin that operation soon enough to come to a full stop as soon as or before his horse's head was eighteen feet from the track. It was his duty to stop. Had he done so, this accident would not have happened." It, therefore, appears that the trial judge held, as a matter of law, the plaintiff was guilty of negligence in not stopping the second time and at another point nearer the crossing, where he would have had a view of the tracks to the east.

We are of opinion that the court erred in not submitting the question of the plaintiff's negligence to the jury. In his charge the trial judge says: "The evidence is undisputed that the plaintiff stopped at a point where it was usual for travelers to stop, variously estimated at from sixty to 100 feet away from the crossing." And in his opinion, he also says: "As he (plaintiff) approached the railroad, he stopped at a point where it was customary for travelers to stop, and variously estimated as being from sixty to one hundred feet from the railroad, the plaintiff's own estimate being sixty or seventy feet." As conceded by the court, the testimony conclusively shows that the plaintiff stopped at the usual and customary place at which persons stop when approaching the crossing. This of itself, prevented the court from deciding as a matter of law that the plaintiff was guilty of negligence: Cookson v. Pittsburg, etc., Railway Company, 179 Pa. 184. In that case it was held that " the usual and customary place of stopping by people when about to cross a railroad at a grade crossing cannot be said as a matter of law to be an improper or negligent place. The standard of negligence is what persons of ordinary prudence and carefulness would do under the same circumstances; and a general habit of the public to stop in a certain place, is persuasive evidence that that place is the right one."

It is contended, however, by the appellee and was held by the court that as the view east was obstructed at the point at which the plaintiff stopped, it was negligence per se for him not to stop again at some point at which he could see a train approaching from the east. The evidence, however, shows that he could not obtain a view of the tracks to the east until he

was at or near the electric signal post, where a view to the west
is more or less obstructed. According to the testimony, he
would then be in a position made dangerous by reason of the
steep embankment to the west of the highway and where his
horse was likely to be frightened by the sudden appearance of a
train or the ringing of the signal bell. This case well illus-
trates the peril of a traveler stopping a skittish horse at that
point. Newman did not drive on the track but was carried on it
by his frightened horse when he was attempting to escape the
danger to himself and team by being thrown over the declivity
on the west side of the road. The court, therefore, could not
declare as a matter of law that the plaintiff did not stop at the
proper place or was negligent in not stopping a second time.
This was for the jury. In Whitman v. Penna. R. R. Co.,
156 Pa. 178, it is said by our Brother MITCHELL, speak-
ing for the court: "If notwithstanding the drawbacks of
the place where plaintiff stopped, it still had sufficient advan-
tages over other places, to make it the habitual choice of trav-
elers on that road, only a jury can say whether or not it was
the best, or a proper place to stop, and even if it was, whether
considering its disadvantages, it was not negligence in the
plaintiff not to stop a second time on the level before reaching
the track." In Newhard v. Penna. R. R. Co., 153 Pa. 417,
our Brother DEAN says: " There was testimony that plaintiff
stopped and listened, and while there was strong evidence that
ordinary care demanded he should have stopped at a point
nearer the·railroad, and there also ascertained whether it was
safe to cross, we think the court under the rule laid down in
North Penna. R. R. Co. v. Heileman, 49 Pa. 60, followed by a
large number of cases since in which the question arose, could
not as a matter of law determine the fact. If there had been
any evidence of negligence on part of defendant, then at just
what point the plaintiff should have stopped to look and listen
was for the jury to find."

It was clearly the duty of the plaintiff to stop, look and listen
at a proper place, and having observed this duty, he was also
required to be especially vigilant and careful as he continued
towards the crossing, as his view to the east at the place he
had stopped was obstructed. If there was another safe and
better place for him to stop, he should have done so. This

would have been an exercise of the precaution required of him. But whether there was such a place and he failed to observe the necessary precaution or carefulness after he had once stopped, at the usual and customary place of stopping, was a question for the jury and not for the court. "The duty of the traveler," says our Brother MITCHELL in Cookson v. Railway Company, supra, "is therefore not only to keep a vigilant and continuous lookout, but to stop if a second place affords any increased facility to discover impending danger, but whether there is any such place is a question of fact which is for the jury if at all in doubt." Again, in Muckinhaupt v. Erie Railroad Co., 196 Pa. 213, our Brother FELL, citing many authorities in support of the proposition, says: "But whether the place at which he stopped was the proper place at which to stop, and whether there is a second place at which he should stop, are questions of fact for the jury, and not matters of law for the court."

The appellee in support of its position cites numerous decisions, but the facts of these cases clearly distinguish them from the case at bar. The plaintiff did not drive in front of an approaching locomotive, nor did he fail to observe the imperative rule which required him to stop, look and listen for an approaching train. Whether he stopped at the proper place and thereafter continued to use due vigilance in approaching the crossing must determine whether he was negligent, and that question is for the jury. The authorities cited by appellee did not authorize the court to determine it.

On another trial of the case it is suggested that an accurate plan of the locus in quo showing such distances as can be ascertained by measurements, be furnished the jury. Disputed distances should be omitted. We are not convinced that the photographs in evidence aided the jury in their deliberations; on the contrary, as they appear in the paper-book, they are in some respects misleading.

The second assignment of error is sustained and the judgment is reversed with a venire de novo.