# Barthelmas, Appellant, *v.* Lake Shore & Michigan Southern Railway Company.

*Negligence—Railroads—Grade crossing—"Stop, look and listen"— Evidence—Case for jury.*

1. The rule which imposes on the traveler the duty of stopping, looking and listening before entering on a crossing, implies antecedently that there is a safe place where he may stop and by the exercise of his senses of seeing and hearing, inform himself as to the situation

with respect to safety. Where there is no such place his failure to stop will not acquit him of contributory negligence if he does not stop, the rule being imperative and invariable that the traveler must stop, look and listen, no matter what the conditions, and failure to do so is negligence per se.

2. If the proper place at which one stops admits of but a restricted view of the track, and the conditions are such as to deaden the sound or signal of an approaching train, it is the travelers' duty in entering on the crossing to be all the more cautious, and observant; but the law defines no particular act in this connection which at his peril he must do or refrain from doing. If it be shown that he stopped at a place as good as any other for observation and looked and listened without seeing or hearing warning, whether he was negligent in entering upon the crossing would depend entirely upon the circumstances under which he made his attempt.

3. Where a traveler with several tracks to cross enters upon the first track without violating any fixed rule, the duty continues with him to be watchful to the end. The law defines no particular act that he must do to avoid the imputation of contributory negligence, except that if any intervening space between any of the tracks offers, where with safety to himself he can have larger opportunities for seeing and hearing, he is bound there to stop, look and listen quite as much as he was bound to stop before entering upon the first track.

4. In an action against a railroad company to recover damages for personal injuries sustained at a grade crossing, the case is for the jury where the evidence is in effect that the plaintiff at the time of the accident was driving a one-horse milk wagon, opened at the sides and in front; that at the crossing there were eleven tracks, the view of which was obstructed by large establishments and by standing cars; that the gate at the farther end of the crossing was open, and a bell on a pole used to give warning of approaching trains was silent; that plaintiff stopped, looked and listened at a point near the tracks equal in opportunities for observation to any he had passed; that he advanced upon the first track and there again stopped, looked and listened; that he then proceeded, crossing the second, third and fourth tracks, the view of which was all obstructed by standing cars; that between the fourth and fifth tracks there was only a space of seven feet; that after passing the fourth track the view was at most only for a distance of about forty feet; and that immediately upon plaintiff's emerging from behind box cars on the fourth track, he was struck by a train passing on the fifth track.

Argued April 27, 1909. Appeal, No. 139, Jan. T., 1909, by plaintiff, from judgment of C. P. Erie Co., Sept. T., 1907, No. 75, for defendant non obstante veredicto in case of Wil-

liam Barthelmas v. The Lake Shore & Michigan Southern Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WALLING, P. J.

The circumstances of the accident are set forth in the opinion of the Supreme Court.

At the trial the jury rendered a verdict in favor of the plaintiff for $4,877. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*U. P. Rossiter* with him *P. D. Hyner*, for appellant.—The case was for the jury: Elston v. D., L. & W. R. R. Co., 196 Pa. 595; Confer v. Penna. R. R. Co., 209 Pa. 425; Fennell v. Harris, 184 Pa. 578; Ellis v. Lake Shore, etc., R. R. Co., 138 Pa. 506; Ayers v. Ry. Co., 201 Pa. 124; Link v. R. R. Co., 165 Pa. 75; Newton v. R. R. Co., 18 Pa. Superior Ct. 18; Worthington v. Ry. Co., 23 Pa. Superior Ct. 195; Newman v. R. R. Co., 203 Pa. 530; Smith v. R. R. Co., 158 Pa. 82; McGill v. Ry. Co., 152 Pa. 331; Neiman v. Delaware & Hudson Canal Co., 149 Pa. 92; Bare v. Penna. R. R. Co., 135 Pa. 95; Messinger v. R. R. Co., 215 Pa. 497; Roberts v. D. & H. Canal Co., 177 Pa. 183; Hanna v. Ry. Co., 213 Pa. 157; Lake Shore, etc., Ry. Co. v. Frantz, 127 Pa. 297; Corrigan v. Penna. Co., 218 Pa. 336; Bracken v. Penna. R. R. Co., 222 Pa. 410; Keifner v. Ry. Co., 223 Pa. 50; Beach v. Penna. R. R. Co., 212 Pa. 567.

*T. A. Lamb*, for appellee, cited: Kinter v. Penna. R. R. Co., 204 Pa. 497; Central R. R. Co. of N. J. v. Feller, 84 Pa. 226; Ely v. Ry. Co., 158 Pa. 233; Mankewicz v. R. R. Co., 214 Pa. 386; Penna. R. R. Co. v. Beale, 73 Pa. 504; Penna. R. R. Co. v. Ackerman, 74 Pa. 265; Ellis v. Lake Shore, etc., Ry. Co., 138 Pa. 506; Holden v. Penna. R. R. Co., 169 Pa. 1; Blotz v. R. R. Co., 212 Pa. 154; McKahan v. B. & O. R. R. Co., 223 Pa. 1;

Walsh v. Penna. R. R. Co., 222 Pa. 162; Keller v. P. & R. Ry. Co., 35 Pa. Superior Ct. 488; Lohrey v. Penna. R. R. Co., 36 Pa. Superior Ct. 287.

Opinion by Mr. Justice Stewart, October 11, 1909:

The plaintiff driving west on German street in the city of Erie, in daylight, in a milk wagon, open at the sides and in front, approached a railroad crossing where there were eleven tracks. The first three were sidings, the fourth an exchange freight track, next beyond were four main tracks, the first two being for west-bound trains, the other two for east-bound trains, and beyond, still other sidings. The gate at the entrance to the crossing was open. When he reached this gate he stopped, looked and listened. The place afforded but little if any opportunity for seeing or hearing, nevertheless, it was quite as good for this purpose as any point he had passed. At either side were large establishments built out close to the track, and the noise from these was sufficient to drown the sound of an approaching train or the sound of bell or whistle, while upon either side of the crossing were box cars which shut off his view. Observing that the gate at the farther end was open as well, and that the bell in the tower at that point, which was used to give warning of approaching trains, was at rest, with the watchman in the tower, he advanced upon the first track and there again stopped, looked and listened. He proceeded from this point crossing the second, third and fourth tracks. His view to the side continued to be obstructed by the box cars so long as he was upon any of these tracks. After passing the fourth track he could see at most only for a distance of about forty feet along the tracks. There was here, however, only a space of seven feet between the fourth track and the one next beyond. Immediately upon his emerging from behind the box cars on the fourth track he was struck by a train passing from the west on the first main track. In a charge unexceptionable in its presentation of fact and law the learned trial judge submitted the questions of the defendant's negligence and plaintiff's contributory negligence to the jury. On each issue the find-

ing was against the defendant. A motion for judgment non obstante followed; and upon a review of the case the judge reached the conclusion that, because the plaintiff could neither see nor hear at either place he stopped, a positive and fixed duty rested on him to alight from his wagon and go forward himself or lead his horse until he reached the place where he could get a view of the tracks before attempting to drive further. He accordingly directed judgment for the defendant. This was clearly a mistaken view of the law of the case. First, as to his advancing at all upon the crossing. The rule which imposes on the traveler the duty of stopping, looking and listening before entering on a crossing, implies antecedently that there is a safe place where he may stop, and by the exercise of his senses of seeing and hearing, inform himself as to the situation with respect to safety. Here admittedly there was no such place. This circumstance, under the doctrine of Penna. R. R. Co. v. Beale, 73 Pa. 504, would not have acquitted the plaintiff of contributory negligence had he failed to stop, for he would not have been permitted to show it, the rule being imperative and invariable, that the traveler must stop, look and listen no matter what the conditions, and failure to do so is negligence per se. But the plaintiff did stop, look and listen at a point equal in opportunities for observation to any he had passed, if not better, and as close to the crossing as consisted with safety. He therefore had met every requirement of the rule. Unquestionably further duty rested upon him before advancing upon the crossing, but not under the above-quoted rule, nor because of any other fixed, unbending rule applicable to all cases alike, requiring some particular act to be done, or avoided, as the case may be, after one having stopped at a proper place, looked and listened, then advances. The law requires vigilance and care with every step taken, and these rise in degree with the risk. Therefore, if the proper place at which one stops admits of but a restricted view of the track, and the conditions are such as to deaden the sound or signal of an approaching train, it is the traveler's duty in entering on the crossing to be all the more cautious and observant; but the law defines no particular act

in this connection which at his peril he must do or refrain from doing. If it be shown that he stopped at a place as good as any other for observation, and looked and listened without seeing or hearing warning, whether he was negligent in entering upon the crossing would depend entirely upon the circumstances under which he made the attempt. In this case circumstances proper to be considered would be the open gates—open because of admitted failure of the watchman in charge to do his duty, for which no other excuse is advanced than that he was inexperienced—and the silence of the bell which was intended to give warning of approaching trains; these in connection with the further fact that the obstructions to view were largely of the railroad company's creation. Certainly the conditions invited the plaintiff to attempt the crossing. To what extent he was justified in acting upon the invitation under the circumstances, was not a question that the court could determine by any fixed rule of law, but one exclusively for the jury. The measure of one's duty under such conditions is determined by no fixed standard, and the question of negligence becomes one of law and fact which the jury alone can determine. In Neiman v. D. & H. Canal Co., 149 Pa. 92, the court was asked to instruct the jury, that the plaintiff having stopped at a point where from his own testimony he could not see up the track, the track being concealed from view by buildings, and the steam from a manufacturing plant close by, it was his duty to get out of his wagon and lead his team, and his failure to do so was contributory negligence. The point was refused on the ground that it withdrew from the jury a question of fact which must be determined by them. In a per curiam this court held that whether the plaintiff was guilty of contributory negligence, was one which under the circumstances was entitled to be passed on by the jury: that it could not have been ruled as a question of law.

Having once entered upon the first track without violating any fixed rule, and other tracks remaining to be crossed, the duty continued with the plaintiff to be watchful to the end. But even in this case the law defines no particular act that he must do to avoid the imputation of contributory negligence,

except, that if any intervening space between any of the tracks offers, where with safety to himself he can have larger opportunities for seeing and hearing, he is bound there to stop, look and listen quite as much as he was bound to stop before entering upon the first track. It may be that this plaintiff when he was upon the third and fourth tracks, because of the box cars standing there, was in a safe place, and that it was his duty there to get out of his wagon and advance, either leading or without his horse, to the open space between the fourth track and the one on which he was struck, a space of seven feet and which commanded a view of the track for forty feet. But how are we to know it was a safe place? There may be circumstances making it perfectly safe to stop with a wagon on railroad tracks, but these are certainly exceptional cases. We know that one is safe from an approaching train if he stop at a reasonable distance from the track, and because this is so evidently true, the law is imperative that he shall so stop; because safety in stopping on a track or tracks is not always safe, the law establishes no rule requiring it. Here again, the measure of one's duty is determined by no fixed standard, and the question of negligence becomes one of law and fact which the jury only can determine. This is the doctrine of all our cases. In Cookson v. Pittsburg Ry. Co., 179 Pa. 184, it is said, "The duty of the traveler is therefore not only to keep a vigilant and continuous lookout but to stop if a second place affords any increased facility to discover impending danger, but whether there is any such second place is a question of fact which is for the jury if at all in doubt." In Muckinhaupt v. Erie R. R., 196 Pa. 213, it is said, "He must stop at a proper place, and when he proceeds he should continue to look and observe the precautions which the danger of the situation requires. He should stop again if there is another place nearer the tracks from which he can better discover whether there is danger. But whether the place at which he stopped was the proper place at which to stop, and whether there is a second place at which he could stop, are questions of fact for the jury and not matters of law for the court." Still more directly in point is Elston v. Del., L. & W. R. R. Co., 196 Pa. 595. There

it is said, "If the deceased had been walking over the crossing he might have been held as matter of law to the duty of stopping and looking after he crossed the third track, as he would have had ample space in which to see without exposing himself to danger: Keppleman v. Phila. & Reading Ry. Co., 190 Pa. 333. And the presumption that he looked would have been overcome by the fact that he stepped in front of a moving train which he either saw or could have seen if he had looked, as in Carroll v. Penna. R. R. Co., 12 W. N. C. 348, and Marland v. Pittsburg, etc., R. R. Co., 123 Pa. 487. But riding in a wagon and driving a pair of horses whose management required his attention the conditions were different. The act of the company in so placing its cars that he was obliged to drive through a narrow passage between them, put him in danger from the time he attempted to cross, and it left no place from which he could see until he was in a position where if he had any chance at all a moment's hesitation as to the right course to pursue or a slight error of judgment would result in disaster. The court can treat the question of contributory negligence as one of law only in clear cases where the facts and the inferences to be drawn from them are free from doubt. The deceased obeyed the unbending rule "to stop, look and listen." Having stopped in the place where the public using the highway in the same manner usually stopped, whether he should have stopped again or whether without stopping he should have been seen in time to avoid injury was a question for the jury and not for the court." No less pertinent and explicit is the case of Newman v. R. R. Co., 203 Pa. 530. Further citations are unnecessary. The view of the law here expressed prevailed with the learned judge on the trial of the case, and under proper instructions from him as to the law the jury found the plaintiff clear of contributory negligence. This should have ended the case. It was error to direct judgment for the defendant non obstante. This judgment is now reversed with costs, and judgment is directed to be entered for the plaintiff on the verdict.