Warren W. Link *v.* Phila. & Reading R. R., Appellant.
Simon Link *v.* Philadelphia & Reading R. R., Appellant.

*Negligence—Railroads—Grade crossings—Evidence.*

In an action to recover damages for personal injuries received at a grade crossing, the question whether plaintiff stopped at a proper place, for the purpose of obtaining a view along the tracks, is for the jury where it appears that the view from the highway was obstructed by standing cars and the smoke of a locomotive, and the evidence is conflicting as to whether the plaintiff stopped at the point from which the best view could have been obtained.

Where in a negligence case there is evidence that an electric alarm bell maintained by a railroad company at a crossing was out of order, and at the time of the accident rang so lightly that a person within fifteen feet of it could not hear it, it is proper to admit evidence to show that, a day or two after the accident, the bell was repaired by the railroad company.

Argued April 13, 1894.   Appeals, Nos. 132 and 133, Jan. T., 1894, by defendant, from judgment of C. P. Berks Co., Feb. T.,

1892, No. 54, on verdict for plaintiff.   Before WILLIAMS, MC-
COLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for personal injuries, etc.   Before ENDLICH, J.

At the trial it appeared that, on Dec. 9, 1891, Ammon Link
was killed while driving over a public crossing of defendant's
railroad, near Blandon.   At the time of the accident the de-
ceased was driving a horse and wagon owned by Simon Link.
The first suit was brought on behalf of the surviving child of
Ammon Link to recover damages for his father's death ; and
the second suit by Simon Link, to recover the value of his
'horse and wagon.

The evidence for plaintiff tended to show that the deceased
stopped and looked at a proper point before going upon the
track.

The facts were stated as follows in an opinion discharging
a rule for a new trial, by ENDLICH, J.:

" The accident which cost Ammon T. Link his life occurred
at a place near the station of Blandon, where the defendant's
tracks, running east and west, and a public highway, running
north and south, cross each other at grade, at about right angles.
The tracks crossing the highway are five in number.   On the
extreme north of defendant's right of way, there is a siding
track, which I shall designate with the letter (*a*) ; next comes
the west-bound track (*b*) ; next the east-bound main track (*c*),
switching into the former (*b*) 550 feet east of the crossing ; next,
another siding track (*d*), switching into the east-bound main
track (*c*) about 400 feet east of the crossing ; and, finally, a
third short siding or switch track (*e*).   At a point 250 feet east
of the crossing, the railroad begins to curve and continues to
do so for a distance of 300 feet, the curve made being a one
degree curve.   At the time of the accident there was a caution-
board at the road south of the tracks, nearer to the latter than
the caution-board now there.   Along the public road north of
the railroad, a short distance from the track, there was an elec-
tric gong fixed to a post, at a height of about 15 feet, every
wheel of a train passing over the main track at the point of
attachment, about 1450 feet to the east, being supposed to cause
the bell to ring.   The whistling board is 2106 feet east of the
crossing.   The testimony is conflicting as to how far eastward

from the crossing a train moving upon the track is visible to a person traveling towards the railroad on the public highway from the south, the immediate approach to the railroad being up-hill, whilst a little further south the highway is higher than the railroad. The locomotive that struck the deceased came from the east. The deceased, riding in an open wagon, approached the crossing on the highway from the south. It is in evidence on the part of the plaintiff, but denied by at least one of defendant's witnesses, that, when about 11 to 25 feet or paces from the railroad, he stopped, stood up in the wagon, looked up and down the track, sat down and drove slowly on. Whether the place he stopped was the most favorable one for the purpose of obtaining a view of trains coming from the east, is a matter of dispute under the evidence. On the first siding south of the east-bound track (*c*)—siding (*d*)—a train was standing. It extended from the west side of the crossing, where its engine was, to some distance east of the public road, being cut at the crossing to permit travelers on the highway to pass over the tracks, the open space between the two sections of the train being variously stated to have been from 24 to 57 feet. The four or five cars of the gravel train on that portion of the siding east of the crossing were loaded gondola cars, five or six feet high above the track, and a caboose or house-car. There was much conflicting testimony as to the effect of the presence of these cars upon the deceased's ability to see the approach of the train, as well as upon the questions whether the electric gong (which was testified to have rung so lightly at times that it could not be heard 15 feet away ; which the engineer of the passenger train locomotive swore he could not hear because the noise of the engine ' killed ' it, and which was shown to have been shortly afterwards subjected to repairs at the hands of the defendant's employees ; see R. R. v. Henderson, 51 Pa. 315 ; R. R. v. McElwee, 67 Id. 311 ; McKee v. Bidwell, 74 Id. 218) sounded at all, whether the accustomed whistles were given by the engineer of the passenger train, and whether he rang his bell. It seems, however, to be a fact that the engine of the gravel train and the engine of a freight train standing on the east-bound track (*c*) both near the crossing, were, at the time, blowing off steam, making considerable noise. The speed of the train, at the precise moment when the deceased was struck,

is given as from 10 to 15 miles per hour, though, at the distance
of half a mile to the east, before slowing up, it would appear to
have been 35 to 40 miles. The collision occurred almost im-
mediately after the deceased emerged from between the two
sections of the gravel train, there being only the east-bound
track (c) between the siding (d) on which the gravel train
stood and the west-bound track (b), upon which the engine
struck the deceased's team just back of the horses, where the
pole joins the wagon."

When Franklin Cooney, a witness for plaintiff, was on the
stand he was asked: " Q. How about that bell? Was it in
working order that day? A. I do not know whether it was in
working order that very day, but the day following, or two
days following, they had repairsmen there. Mr. Snyder: I
object; if he didn't see them that day, it is not evidence, it is
irrelevant. The Court: Admitted; exception for defend-
ant. [5]

" By Mr. Jacobs : Q. How was that? A. I noticed they were
repairing it a few days afterwards. Q. Was it the next day,
or when afterwards ? A. The following day, I think. Q. They
repaired that bell? A. The man was there quite a time; pre-
vious to that, I knew that at different times it rang so lightly
when a train was passing and I was 15 feet away, I could not
hear it; I tried it."

Defendant's points were as follows :

"1. There is no evidence in the case that the defendant was
guilty of any negligence which caused or contributed to the
accident which resulted in the death of Ammon T. Link, and
the verdict must be for the defendant." Declined. [1]

" 2. Under all the evidence of the plaintiff the verdict must
be for the defendant." Declined. [2]

" 3. Under all the evidence in the case the verdict must be
for the defendant." Declined. [3]

" 4. If the jury believe that the engineer of the train that
injured Ammon T. Link blew his whistle at the signal-board,
which, according to the testimony, is about two thousand feet
away from the place of the accident, and that the signal so
given could be distinctly heard at and beyond the crossing,
there can be no recovery in this case, and the verdict must be
for the defendant. Answer : If, when the whistle was blown,

the deceased was in a situation to hear it, he must be presumed to have heard it, and if he then went upon the crossing he did so at his own risk, and there can be no recovery for the resulting injury." [4]

Verdict and judgment for Warren W. Link for $5,000, and for Simon Link for $367.83. Defendant appealed.

*Errors assigned* were (1–4) instructions; (5) ruling; quoting instructions, bill of exceptions and evidence.

*Jefferson Snyder, Philip S. Zieber* and *Geo. F. Baer* with him, for appellant, cited: Hauser v. R. R., 147 Pa. 446 ; Urias v. R. R., 152 Pa. 328 ; Lees v. R. R., 154 Pa. 46 ; Myers v. R. R., 150 Pa. 386 ; Newhard v. R. R., 153 Pa. 418 ; R. R. v. Ritchie, 102 Pa. 431.

*J. H. Jacobs, H. P. Keiser* and *A. B. Rieser, M. H. Schaffer* with them, for appellee, cited: Ellis v. R. R., 138 Pa. 506 ; R. R. v. Garvey, 108 Pa. 369 ; R. R. v. Killips, 88 Pa. 412 ; R. R. v. Coon, 111 Pa. 440 ; R. R. v. Peters, 116 Pa. 206 ; Smith v. R. R., 158 Pa. 82 ; Longenecker v. R. R., 105 Pa. 328 ; McGill v. Ry., 152 Pa. 331 ; Urias v. R. R., 152 Pa. 326 ; Neiman v. Canal Co., 149 Pa. 92 ; R. R. v. Werner, 89 Pa. 65 ; 4 A. & E. Ency. of L. 920 ; Thomas v. R. R., 19 Blatchford (U. S. C. C.) 533 ; Mackey v. N. Y., 35 N. Y. 75 ; Kissenger v. R. R., 56 N. Y. 538 ; Brown v. R. R., 50 Mo. 461 ; Ritchie v. R. R., 7 Scotch Sess. Cas. 148 ; Childs v. R. R., 150 Pa. 78 : R. R. v. Lewis, 79 Pa. 33.

OPINION BY MR. JUSTICE McCOLLUM, Jan. 7, 1895 :

The defendant company's principal contention is that there was no evidence introduced on the trial which warranted an inference that there was negligence on its part which caused or contributed to the death of the plaintiff's father. There was evidence, however, submitted by the plaintiff, to the effect that the train was late and running very fast and that the usual signals given on approaching the crossing were omitted. According to his evidence the whistle was not blown after the train left the cut a half mile from the crossing, until the moment of the collision. The engine bell was not rung and the electric bell by the roadside was out of order and did not an-

nounce the approach of the train. This evidence, if believed, was clearly sufficient to show that the company was remiss in the performance of its duty to the traveling public at the point where the accident occurred. It is true that this evidence was plainly contradicted in every essential particular by evidence submitted by the company in reference to the same matters, but the conflict in the testimony did not authorize a peremptory instruction by the court to find for the defendant. There was nothing in the evidence which warranted the court in declaring as a matter of law that there was contributory negligence on the part of the decedent. When in the vicinity of the crossing he stopped, looked and listened for the purpose of ascertaining whether a train was approaching. Before him were five tracks, the east- and west-bound tracks and three sidings. A freight train was then standing on the east-bound track and a gravel train on the siding south of and next to it. The gravel train was cut at the crossing so as to afford an open space of at least twenty-four feet for travelers on the highway, to cross the tracks. The engines attached to these trains were near the crossing and blowing off steam. The cars interfered to some extent with the view of the west-bound track, and the discharge of steam by the engines affected somewhat the ability to hear the usual signals of an approaching train. Whether the deceased stopped at the best point to look for the approach of a west-bound train was a matter in dispute under the evidence submitted by the contending parties. It was therefore clearly a question for the jury.

We cannot say that the learned court erred in its answer to the defendant's fourth point. The point entirely ignored the condition at and in the immediate vicinity of the crossing to which reference has already been made. For this condition the defendant company was responsible and in view of it we think the answer to the point was unobjectionable. Nor do we discover any error in the ruling complained of in the 5th specification. There was, as we have already seen, evidence from which it might be fairly inferred that the bell at the crossing was out of order and failed to give notice of the approach of the train, and that before the occurrence in question it was noticed that it rung so lightly that a person within fifteen feet of it could not hear it. In connection with such evidence, it was

proper to show that a day or two after the accident the bell was repaired by the defendant company.

The specifications of error are overruled.

Judgment affirmed.

OPINION BY MR. JUSTICE McCOLLUM, Jan. 7, 1895:

This case was tried in the court below and argued here with No. 132, Jan. Term, 1894, just decided. The material questions in that case were the same as in this, and for the reasons stated in the opinion filed in that the judgment in this is affirmed.