# Summers *v.* Bloomsburg & Sullivan Railroad Company, Appellant.

*Negligence—Railroads—Grade crossing—"Stop, look and listen"—Contributory negligence.*

In an action against a railroad company to recover damages for personal injuries to plaintiff and for the killing of a mule, it appeared that the accident occurred in the night time at a point where a public highway obliquely intersected defendant's tracks. The crossing was a dangerous one, inasmuch as trains from the northeast approached it by a curve emerging from behind a high cliff of almost perpendicular rocks on the south side of the track. A creek was to the northward. There was a whistle post about 1,098 feet northeast of the crossing. The track ran in a southwesterly direction from the whistle post along the bank of the creek to a point near the crossing when it curved sharply to the south, passed through a short deep cut in the rocks, and almost immediately onto the crossing. A person standing in the middle of the crossing could only see along the track northeastwardly 200 feet. Plaintiff testified that he stopped, looked and listened for approaching trains, at a point where he, standing up in his wagon was thirty feet from the crossing, which would put the pair of mules which he was driving considerably nearer the track, that he heard no sound of whistle, bell or other warning of an approaching train, that it was dark and he could only see the track in the direction from which the train afterwards came for the length of a rail and a half, that he then walked his team to the crossing and just as the front feet of the team were upon the track he saw the headlight of a locomotive coming around the curve to the eastward, that he attempted to back his team off the track, succeeded in getting the mule which had been on the side from which the train was coming clear of the track but the locomotive struck the end of the tongue, knocked down and injured the other mule so that he had to be killed, and caused personal injuries to plaintiff. Plaintiff's testimony that no warning was given by the train was corroborated by a disinterested witness who stated that he actually watched the train from the time it passed the whistle post until it reached the crossing, and that no whistle was blown and no bell rung. The testimony was contradicted by several witnesses for the defendant. The engineer of the train testified that it was run at the rate of five miles an hour. The witness who testified as to the absence of signal also stated that the train was running at its usual rate, and had not slackened its speed. Plaintiff testified that he did not know that a train was then due at the crossing. The train was as a matter of fact behind time. Plaintiff's testimony that he stopped, was contradicted by several witnesses for the defendant. *Held,* that the question of defendant's negligence and plaintiff's contributory negligence was for the jury, and that a verdict and judgment for plaintiff should be sustained.

MORRISON, J., dissented.

Argued Jan. 15, 1903.    Appeal, No. 62, Jan. T., 1903, by

616     SUMMERS *v.* RAILROAD CO., Appellant.

Statement of Facts—Opinion of the Court. [24 Pa. Superior Ct.

defendant, from judgment of C. P. Columbia Co., May T., 1900, No. 69, on verdict for plaintiff in case of William E. Summers v. Bloomsburg and Sullivan Railroad Company. Before BEAVER, SMITH, W. W. PORTER, W. D. PORTER and MORRISON, JJ. Affirmed.

Trespass to recover damages for personal injuries and for the death of a mule.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*James Scarlet*, with him *L. W. Waller*, for appellant, cited : P. & R. Railroad Co. v. Hummell, 44 Pa. 375 ; Raby v. Cell, 85 Pa. 80 ; Bornscheuer v. Traction Co., 198 Pa. 332 ; Gray v. Penna. R. R. Co., 172 Pa. 383 ; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233 ; McNeal v. Pittsburg, etc., Ry. Co., 131 Pa. 184 ; Urias v. Penna. R. R. Co., 152 Pa. 326 ; Derk v. Northern Cent. Ry. Co., 164 Pa. 243 ; Gangawer v. P. & R. R. R. Co., 168 Pa. 265.

*Fred Ikeler*, of *Ikeler & Ikeler*, with him *J. B. Robinson*, for appellee, cited : Holden v. Penna. R. R. Co., 169 Pa. 1 ; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233 ; Cookson v. Pittsburg, etc., Ry. Co., 179 Pa. 184 ; Muckinhaupt v. Erie R. R. Co., 196 Pa. 213 ; McNeal v. Pittsburg, etc., Ry. Co., 131 Pa. 184 ; Davidson v. Ry. Co., 171 Pa. 522 ; Carroll v. Penna. R. R. Co., 12 W. N. C. 348 ; Link v. P. & R. R. R. Co., 165 Pa. 75.

OPINION BY W. D. PORTER, J., April 18, 1904 :

The plaintiff seeks to recover damages for injuries received in a grade crossing accident and obtained a verdict and judgment in the court below. The appellant now contends that the court below erred in submitting the case to the jury, because : first, the evidence failed to established the negligence of the defendant company, and, second, it did establish the contributory negligence of the plaintiff. The accident occurred

in the night-time at a point where a public highway of the town of Bloomsburg obliquely intersects the tracks of the defendant company. The plaintiff testified that he stopped, looked and listened for approaching trains, at a point where he, standing up in his wagon, was thirty feet from the crossing, which would put the pair of mules which he was driving considerably nearer the track, that he heard no sound of whistle, bell or other warning of an approaching train, that it was dark and he could only see the track in the direction from which the train afterwards came for the length of a rail and a half, that he then walked his team to the crossing and just as the front feet of the team were upon the track he saw the headlight of the locomotive coming around the curve to the eastward, that he attempted to back his team off the track, succeeded in getting the mule which had been on the side from which the train was coming clear of the track but the locomotive struck the end of the wagon tongue, knocked down and injured the other mule so that it had to be killed, and caused personal injuries to plaintiff. It is true the testimony of the plaintiff as to the failure of the employees of the defendant company to give warning of the approach of the train was of a negative character,—he heard no signal. But he was corroborated by the testimony of the apparently disinterested witness Chrisman who from his position on the other side of the creek had an unobstructed view of the train for a long distance and almost until it reached the crossing. Chrisman testified that he heard the sound of the train approaching, and actually watched the train from the time it passed the whistle post, which was over a thousand feet from the crossing until it passed into the cut at the curve almost at the public crossing, and that no whistle was blown and no bell rung. This testimony was flatly contradicted by several witnesses who testified that the whistle was blown and that the bell was rung. The question of the negligence of the defendant company was one of fact to be determined by the jury, upon this conflicting evidence: Link v. Philadelphia & Reading R. R. Co., 165 Pa. 75.

There was no conflict in the testimony as to the opportunity which a person traveling northward upon the public road had of observing the trains of the railroad company which approached from a northeastern direction. The signal post

where engines of the railroad company at that time whistled for the crossing was 1,098 feet northeast of the crossing. The railroad track at that point and from there almost to the crossing was located between a high cliff of almost perpendicular rocks on its south side and the bank of the creek to the northward. The track ran in a southwesterly direction from the whistle post, along the bank of the creek, to a point near the crossing when it curved sharply to the south, passed through a short, deep cut in the rocks and almost immediately onto the public highway which it crossed at an acute angle. A person standing at the intersection of the middle of the track with the middle of the highway could only see along the track in a northeasterly direction 200 feet, the further view being cut off by the high walls of rock around which the track abruptly curved. At a point distant from the center of the track, and measured along the center of the road, ten feet a man could be seen standing on the track at a point 150 feet northeast of the crossing, but so obliquely did the railroad cross the highway that with the heads of a double team standing at that point one of the horses would be upon the tracks, while the other horse would have still ten feet to travel before reaching the nearest rail. At a point seventeen feet from the crossing a man could be seen standing upon the track 112 feet to the eastward, and at that point both horses of a double team would be clear of the track. At forty feet from the crossing the view of the track to the northeast of the crossing was limited to sixty-six feet, and at seventy-five feet from the crossing a traveler on the highway could see a man on the track only forty feet from the crossing. The opportunities for seeing a train approaching from the northeast by a person traveling along the public highway from the south, being thus limited, it was not only important that the railroad company should give some reasonable warning that appealed to the sense of hearing, but also that persons using the highway should make use of that sense. The plaintiff testified that he stopped, looked and listened at a point where he standing in his wagon was thirty feet from the crossing, which would probably put the heads of his team and the end of the wagon tongue about twenty feet from the crossing, although one of the mules must have been much nearer the eastern or southern rail of the track. This testimony was

flatly contradicted by a witness who stood on the other side of and some distance from the track, who said that he could see the team, and that it did not stop. This witness was to some extent corroborated by other witnesses, who while they could not see the team testified that they heard the rattle of the wagon over the frozen ground and that there was no interruption of that noise until the accident occurred. The weight of the evidence may have been against the plaintiff upon this point, but considering the opportunities of the witnesses for observation we are not satisfied that the preponderance in favor of the defendant was so overwhelming as to justify the court in withdrawing the case from the consideration of the jury, upon the authority of Holden v. Penna. Railroad Co., 169 Pa. 1, in which case the uncorroborated testimony of the plaintiff was flatly contradicted by the person driving the carriage and four other disinterested witnesses who saw the accident.

The learned judge of the court below, in affirming the third point submitted by defendant, instructed the jury that the only evidence that the plaintiff stopped at a point thirty feet from the track was the testimony of the plaintiff himself; that he was contradicted by seven witnesses; "and that the testimony of these seven witnesses is of such weight and conclusiveness that the jury cannot capriciously disregard it and accept the unsupported testimony of the plaintiff that he did stop, and that if the jury believed the testimony of the defendant's witnesses the verdict ought to be for the defendant."

The conflicting testimony upon this point was thus submitted to the jury in a manner of which the defendant company had no right to complain. The appellant contends that even if the plaintiff did stop at the point indicated by his testimony, the place was so manifestly not the proper one to stop under the circumstances, that it was the duty of the court to so declare and withdraw the case from the jury. It is by no means clear that the place at which plaintiff stopped was not the very best that he could have selected. Owing to the angle at which the track crossed the public highway, one of the mules which he was driving must have been very close to the track, it is at least doubtful whether it would have been prudent for him to proceed further without stopping, and the evidence clearly indicates that there was no point more distant from the

crossing at which he could have obtained a more extended view. Had he gotten out and lead his team fifteen or twenty feet he would have been in the middle of the railroad track and would have been able to see an approaching train at a distance of 200 feet, but had a train then come round the curve he would have had to back his team more than ten feet before it would have been entirely clear of the track. This would have been an exceedingly dangerous undertaking, and would have probably resulted in the loss of the life of the plaintiff and the destruction of his team. The court below instructed the jury in this language : " The whole duty of one about to cross the track of a steam road at grade is not in all cases confined to his stopping, looking and listening for the approach of a train. He must stop at a proper place, and when he proceeds he should continue to look and to observe the precautions which the danger of the situation requires. He should stop again if there is another place nearer the tracks from which he can better discern whether there is danger." This is the very language which our Brother MORRISON quoted in his opinion in the case of Fry v. Pennsylvania Railroad Company recently decided by this court. Whether the place at which the plaintiff stopped was the proper place for him to do so, and whether there was a second place at which he should have stopped, were under the evidence in this case questions of fact for the jury, and not matters of law for the court: Pennsylvania Railroad Company v. Ackerman, 74 Pa. 265; McGill v. Pittsburg & Western Ry. Co., 152 Pa. 331 ; Ely v. Pittsburg, etc., Railway Co., 158 Pa. 233; Link v. Phila. & Reading Railroad Co., 165 Pa. 75; Cookson v. Pittsburg, etc., Railway Company, 179 Pa. 184; Muckinhaupt v. Erie Railroad Co., 196 Pa. 213; Newman v. Delaware, etc., Railroad Company, 203 Pa. 530.

The attempt of defendant's counsel to prove by a mathematical demonstration that the defendant could not have stopped and looked without seeing the approaching train, is based upon the theory that the train was moving at the rate of five miles an hour. The rate at which the train was moving is by no means free from doubt. The engineer alone so testified, and the creditability of that witness was to be determined by the jury under all the circumstances. The fact that the train struck the plaintiff's wagon so quickly after coming round the

curve would seem to indicate that the speed was greater than that which a person could walk. Chrisman, the witness who watched the train come a long distance before it turned into the curve, almost at the crossing, testified that the train was running at its usual rate and had not slackened its speed. Here was such a conflict of testimony as would not have warranted the court in determining the rate at which the train was moving as a matter of law, or assuming it as an undisputed fact.

The assertion that the plaintiff knew there was a train then due at the crossing is not sustained by the evidence. All the witnesses agree that the train was behind time. Had it been on time it would have passed before the plaintiff came in sight of the crossing. There was no evidence that the defendant was aware the train was behind time, and he himself testifies that he believed it had passed.

A careful consideration of the testimony convinces us that upon all the questions material to this issue there was a substantial conflict of testimony, and it was the duty of the court to submit the case to the jury: McNeal v. Pittsburg, etc., Railway Company; 131 Pa. 184; Davidson v. Lake Shore, etc., Railway Co., 171 Pa. 522.

The judgment is affirmed.


MORRISON, J., dissenting:

The important question in this case is as to the contributory negligence of the plaintiff. He alleged injury to his team and himself caused by the negligence of the defendant railroad company at a point where the public highway crossed the railroad track in the town of Bloomsburg. It was proved and conceded at the trial that this was one of the most dangerous railroad crossings within the state of Pennsylvania. On the night of the accident a train was due at this point at about six o'clock in the evening of January 29, 1900, when of course it was dark. The train causing the accident was coming from the north, and as it approached this highway, the track was in a cut which completely obscured the train until it came very near to the crossing. On this night the wind was blowing from the defendant towards the approaching train so that any noise made by the train could not be heard, and the plaintiff claimed was not heard

by him.    The train was nearing a stopping place and it is con-
ceded was only running at the rate of about five miles per hour.
The plaintiff was very familiar with this crossing, having tes-
tified that he had passed over it thirteen times on the day of
the accident.

The plaintiff testified that his view of the approaching train
was cut off by a bluff rising from six to 100 feet, and that look-
ing for the train would give no knowledge of its approach;
that on a windy day neither whistle nor bell nor rumble of a
train could be heard at the point where he claims to have stopped;
that a high wind was blowing, and that he stopped for only a
second or two.    The question arises, did he use ordinary care
in his attempt to cross the railroad track at almost the precise
time that a train was due at that point?

Mrs. Bessie Deihl and several other witnesses knew that the
train had not passed this point, and that in driving across the
railroad at that time, the plaintiff was in danger of being injured.
Mrs. Deihl says she ran after the plaintiff and tried to stop him.
Mrs. Casey testified that she called to him.    In short it appears
that everybody in that vicinity who observed the plaintiff ap-
preciated that he was in danger if he drove on the track, and
yet he went upon the track after stopping as he says, one or
two seconds, at a point thirty feet from the track.

The testimony of the engineer, his own witness, is as follows:
" Q. At point E, seventy-five feet from the crossing, how far
could a traveler see the track eastwardly?    A. When I was
standing at E, I placed a man on the track; he could just see
me when I was forty feet from station two.    Q. At point D,
which is forty feet from the crossing, how far could you see up
the track?    A. I could see my man sixty-six feet.    Q. At sta-
tion C, which is seventeen feet from the crossing, how far could
you see up the track?    A. I could see my man 112 feet.    Q. At
station B, which is ten feet from the crossing, how far could you
see?    A. One hundred and fifty feet.    Q. Did you make any
observation standing at station two, which is the middle of the
track?    A. At station two the track was visible for 200 feet.
Q. Standing on the track itself?    A. Standing in the middle
of the track, the track was visible for 200 feet."

The plaintiff testifies that at the time he drove upon the track
he saw the light of the approaching train.    It therefore appears

to me that his own testimony and the testimony of his engineer convicts him of gross carelessness, which of course is contributory negligence. He only claims to have stopped for a second or two thirty feet from the track, and admits that at that point he could not see an approaching train. But at a distance of seventy-five feet from the crossing he could have seen the train forty feet. At forty feet from the crossing he could have seen a man on the track sixty-six feet distant. At seventeen feet from the crossing he could have seen a man on the track 112 feet. At ten feet from the crossing he could have seen 150 feet, and standing in the middle of the track, he could have seen 200 feet distant. These distances are taken from the testimony of the plaintiff's engineer, and they refer to the distance a man could be seen on the track in daylight looking towards the point from which the train came. It is very certain that a train with a headlight burning in a dark night could easily be seen as far. It therefore appears that the plaintiff, if he stopped at all, selected the very poorest place from which to look and listen. He says himself that he could not see the train from where he stopped, and that owing to the wind blowing towards the train he could not hear it, and yet as a material part of his case he proved by his engineer that there were several other places where he could have stopped and easily have seen this approaching train. The crossing being a very dangerous one he was called upon to use extraordinary care. Instead of doing this the evidence, in my opinion, convicts him of gross carelessness. If a plaintiff is to be permitted to go to a jury with his case on his own unsupported testimony contradicted as the evidence of this plaintiff was by so many witnesses and circumstances which overwhelmingly tend to show that he did not use even ordinary care at this dangerous crossing, then the rule that a traveler must stop and look and listen and use such care as the circumstances require may as well be abrogated.

In my opinion this case furnishes a much stronger example of contributory negligence on the part of the plaintiff than Knox, Appellant, v. Phila. & Reading Ry. Co., 202 Pa. 504. In that case the plaintiff was denied the right to go to the jury on account of his own negligence, and yet it seems to me that his testimony made a stronger case than the one under consideration. I find myself unable to agree with my associates that

the learned court below committed no error in submitting this case to the jury.    I would reverse this judgment on the ground that the plaintiff was guilty of contributory negligence.

In addition to this a careful examination of the evidence does not convince me that the defendant company was guilty of any negligence in relation to this plaintiff.    He was perfectly familiar with the danger of this crossing ; he had known it for many years ; the train was running at the rate of about five miles per hour ; the whistle had been sounded and the bell rung and the headlight was burning and the train was nearly on time and the persons in charge of it had a right to assume that a man who was perfectly familiar with this crossing would not drive upon it at the time and in the manner that the plaintiff did.    I am convinced that a proper consideration of the evidence ought to clear the defendant from the charge of negligence, which was necessary to carry the case to the jury.